UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PHILLIP ALPHONSE,

    Plaintiff,

v().                                               Case No. 3:24cv278-TKW-HTC

LIEUTENANT J. WHITE, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Phillip Alphonse ("Alphonse"), a prisoner proceeding *pro se* and *in forma pauperis*, brings this suit against correctional officers at Santa Rosa Correctional Institution ("SCRI") for violating his Eighth Amendment rights during a use of force incident. Doc. 1. Before the Court is Defendants' motion for partial summary judgment. Doc. 27. Specifically, they seek summary judgment on claims 1 and 2,[1] for use of excessive force and failure to intervene, respectively, and Alphonse's claims for compensatory and punitive damages.

As an initial matter, Alphonse was directed to file a response if he opposes the motion. Doc. 30. In the Court's Order directing a response, the Court advised Alphonse in bold print that "the Court will consider the motion unopposed or as an indication Plaintiff does not intend to prosecute this case and may enter judgment in

---

[1] Claims 1 and 2 relate to the Defendants' use of force during a cell extraction and Claims 3 and 4, which are not subject to summary judgment, relate to Burdett's alleged insertion of a finger into Alphonse's rectum during the cell extraction. *See* Doc. 1 at 9-10.

favor of the Defendants" if he does not respond. *Id.* Although Alphonse moved (and was granted) an extension of time to file a response, that time has passed without an opposition from Alphonse. Thus, the Court *could* dismiss this case for failure to prosecute. Rather than do so, however, for judicial efficiency, the Court will consider the merits of Defendants' motion. In doing so the Court "must ensure that summary judgment is appropriate against a party that files no response," but has no obligation "to distill every potential argument that could be based upon the material before it," including no burden to sift through the pleadings to identify facts or arguments that favor the non-moving party. *Edmondson v. Bd. of Trs. of Univ. of Ala.*, 258 F. App'x 250, 253 (11th Cir. 2007); *Sherman v. Speer*, 2019 WL 3006626, at *16 (M.D. Ala. Mar. 27, 2019).

Upon consideration of the motion and the relevant law and for the reasons discussed below, the undersigned finds the Defendants' motion is appropriate and should be GRANTED, other than as to Alphonse's claims for punitive damages.

## I.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; [indeed,] the requirement is that there be no *genuine* issue

of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

## II.   The Facts[2]

On August 6, 2021, at approximately 11:19 a.m., Defendant White conducted rounds at SRCI. Doc. 27-1 at 11. He "observed" Alphonse's cell window was covered, knocked on his window, and called out to Alphonse. *Id.* Based on Alphonse's unresponsiveness, Defendant Burdett "responded to a call for assistance." *Id.* Defendants Burdett and White "attempted to gain a response" from

---

[2] These facts are derived from the post use of force incident reports submitted by the Defendants. Doc. 27-1 at 11-18. Although the Court recognizes the facts asserted by Defendants may not be consistent with those alleged in Alphonse's complaint, the Court also has no obligation to sift through the complaint to find those inconsistencies. Indeed, in "opposing a motion for summary judgment, a party may not rely on [their] pleadings to avoid judgment." *Edmondson*, 258 F. App'x at 253. Also, although Defendants submitted video footage, the footage is unhelpful as it does not clearly show the events that occurred inside Alphonse's cell.

Case No. 3:24cv278-TKW-HTC

Alphonse "to no avail." *Id.* Defendant White "called for additional staff to bring a shield and a camera for a possible life safety check," but "a hand-held video camera could not be obtained [at that time]." *Id.*

"Due to [a] totality of circumstances" including Alphonse's unresponsiveness "for over four minutes," a "life safety check was [then] conducted." *Id.* Defendant Burdett entered Alphonse's cell first carrying a shield, and Alphonse charged at Burdett and "batter[ed] staff with closed fist[s]." *Id.* Defendants Wentz and Burdett used "pulling force" to move Alphonse to a prone position to apply restraints, but Alphonse "aggressively resist[ed], striking" Defendants Burdett and Alligood "with closed fists." *Id.* at 11-12.

After Alphonse was ultimately placed in a prone position and continued to "aggressively resist[]," Defendants Burdett and Wentz applied "body weight" and "downward pressure" on Alphonse's upper and lower body. *Id.* at 12. Defendant Alligood "retrieve[d]" Alphonse's "arms from underneath him," and Defendants Burdett and Lowery then "applied leg restraints." *Id.* While applying restraints, Alphonse "made several attempts to grab the restraints, spit at, and bite staff with no success." *Id.* "At approximately 11:25am, all restraints were applied and all force[] ceased." *Id.* Alphonse "attempt[ed] to expectorate on staff," and Defendant Burdett "applied a spit shield." *Id.*

Case No. 3:24cv278-TKW-HTC

Defendant Lowery retrieved the handheld video recorder at roughly 11:26 a.m. and began recording. *Id.* Defendant White gave a brief lead in statement on the video, and Defendants Burdett and Alligood then escorted Alphonse to medical. *Id.* Upon examination, Alphonse had a roughly 1 cm laceration to his right eyebrow and superficial swelling. Doc. 27-1 at 19-20.

## III. Discussion

### A. Eighth Amendment Excessive Force and Failure to Intervene Claims

Alphonse sues Defendants under the Eighth Amendment for use of excessive force and failure to intervene. He alleges that when Defendants "rolled [his] cell door" and entered the cell, he tried to leave because he was not handcuffed. At that point, the Defendants allegedly punched, struck, and tackled him to the ground. After Defendants were able to handcuff him, Defendant Lowery went to get a handheld camera, and the other four Defendants continued using force against him.[3]

The "core judicial inquiry" in excessive force claims under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In

---

[3] Alphonse also alleges that during the use of force, Burdett pulled down Alphonse's boxers and inserted his finger inside his rectum. As stated in footnote 1, these allegations comprise claims 3 and 4 of Alphonse's complaint and are not addressed in Defendants' motion.

determining if force was applied maliciously and sadistically to cause harm in violation of the Eighth Amendment, courts consider: (1) the need to apply force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials based on facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Additionally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted).

Here, the evidence submitted by Defendants (and unrebutted by Alphonse) is that (1) Alphonse was in close management on August 6, 2021, *see* Doc. 27-1 at 8; (2) during a routine check of the dorm, Defendant White observed Alphonse's cell window was covered, obstructing the view inside, *see* Doc. 27-1 at 11; (3) White called out to Alphonse but he was nonresponsive, *see id.*; (4) White called for assistance and the other Defendants responded, *see id.*; (5) after waiting 4 minutes, Defendants breached the door to conduct a safety check, *see id.*; (6) as soon as the door was breached, Alphonse, who was not handcuffed, began battering staff, *see id.*; (7) Defendants used necessary force, including bodyweight pressure, to restrain

Alphonse, *see id.* at 11-12; and (8) Alphonse received a one-centimeter laceration to his right eyebrow and superficial swelling, *see* Doc. 27-1 at 19-20.

Applying those facts to the *Whitley* factors, the undersigned finds summary judgment on claims 1 and 2 to be appropriate. First, there was a need to use force because Defendants were unable to see inside the cell, Alphonse failed to respond to their verbal commands, and Alphonse tried to exit the cell, was unrestrained, and tried to batter the officers when they breached the door. Because Alphonse did not respond to the motion, he offers no evidence to rebut these facts nor to call them into serious doubt.

Indeed, in the complaint, Alphonse admits "upon entering Plaintiff's cell, Plaintiff himself begin to exit the cell realizing his door just rolled without him being handcuffed." Doc. 1 at 6. Alphonse's allegation that officers "rolled plaintiff cell door without justification," is simply too conclusory to defeat Defendants' motion. *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir. 1993), *modified,* 14 F.3d 583 (11th Cir. 1994) ("The plaintiff opposing summary judgment has the burden of showing that a genuine dispute on a material fact exists. Conclusory allegations or evidence setting forth legal conclusions are insufficient to meet the plaintiff's burden.") (internal citations omitted). Notably, Alphonse does not dispute the cell window was covered up or that he was non-responsive.

Second, the undersigned finds the evidence sufficient to show the use of force was not more than necessary to restrain Alphonse. Defendants admit to using downward pressure with their bodyweight and to yanking Alphonse's arms from beneath him so that they could put him in restraints. Once again, because Alphonse did not respond to the motion, he failed to rebut the evidence presented by Defendants; and Alphonse's allegation that the force used was "unnecessary" or "without any justification," is too conclusory to defeat Defendants' motion. *Id.* And while Alphonse alleges Defendants punched, slammed, and tackled him—that conduct, alone—does not show that the force was more than necessary to gain compliance. *See Hudson,* 503 U.S. at 9 ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Nowhere does Alphonse allege he was compliant or followed instructions. *See Flagg v. Moore*, 2021 WL 1676276, at *11 (M.D. Ala. Jan. 25, 2021) (finding *Whitley* factors weighed against plaintiff's claim of excessive force despite allegations that plaintiff was "kicked, punched and slammed" as well as tased, "while being assaulted in handcuffs," because "[n]owhere does Plaintiff dispute his refusal to follow orders, or his refusal to submit to restraint").

Third, the extent of Alphonse's injuries was minimal. As documented in the post use-of-force medical examination and seen in the handheld video—Alphonse suffered a 1 cm laceration to his right eyebrow and superficial swelling. *See* Doc.

27-1 at 19-20. While a lack of serious injury does not preclude a finding of excessive force, the extent of the injury can be indicative of the level of force used and whether it was more than necessary. *See Hendricks v. Carter*, 2015 WL 5579738, at *12 (M.D. Ala. Sept. 15, 2015) ("The 'absence of serious injury' provides some indication of the level of force used, and the 'prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (quoting *Hudson*, 503 U.S. at 9-10).

The fourth and fifth *Whitley* factors also weigh against a finding of excessive force. Alphonse was in close management and when he did not respond to Defendants' commands during the routine check-in, Defendants needed to act to ensure that Alphonse was not attempting to harm himself. Finally, Defendants contend they used only the force necessary to gain control. Alphonse's allegations that the force was excessive, that it continued "without need or provocation," and was done "maliciously and sadistically" may have been sufficient to survive a motion to dismiss, but they are not sufficient, absent some factual support, particularly in the face of evidence to the contrary, to overcome a motion for summary judgment. *See Maye v. Thomas*, 2015 WL 2408101, at *5 (N.D. Ala. May 20, 2015) ("to create a genuine issue of material fact, the plaintiff must come forward

with evidence from which a reasonable inference can be drawn that [Defendant] acted malicious and sadistically").

Thus, reviewing the unrebutted evidence submitted by Defendants and viewing the facts in the light most favorable to Alphonse, the undersigned concludes there is no evidence from which a jury could reasonably conclude that the Defendants' use of force was "repugnant to the conscience of mankind."[4] *Hudson*, 503 U.S. at 9-10; *see also*, *Hendricks*, 2015 WL 5579738 at * 12 (collecting cases finding no excessive force). The motion, therefore, should be granted as to both the excessive force and failure to intervene claims asserted in claims 1 and 2 of the complaint. *See Jacoby v. Baldwin Cnty.*, 666 F. App'x 759, 764 (11th Cir. 2016) (A failure to intervene claim hinges on the existence of a successful underlying excessive force claim.).

### B.     Punitive Damages

Defendants also argue that Alphonse cannot recover punitive damages under the Prison Litigation Reform Act ("PLRA"). In relevant part, the PLRA states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the

---

[4] Because the undersigned finds Defendants did not violate Alphonse's constitutional rights as alleged in claims 1 and 2, the undersigned need not address Defendants' qualified immunity argument as to those claims. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002) ("The threshold inquiry a court must undertake in qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."). Similarly, because the undersigned is recommending judgment on claims 1 and 2, the undersigned need not address Defendants' argument that Alphonse is not entitled to compensatory damages because his injuries (i.e., a laceration and swelling) are *de minimis*. *See* 42 U.S.C. § 1997e(e).

> Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). This statute's definition of "prospective relief" includes punitive damages. *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

Defendants argue that punitive damages "cannot satisfy the strict requirements" of this statute because: (1) correcting a federal rights violation "is accomplished through compensatory damages and punitive damages are, by their nature, never corrective"; and (2) even assuming punitive damages are corrective, punitive damages cannot be "narrowly drawn," "extend no further than necessary," and be "the least intrusive means necessary" to correct the federal rights violation. Doc. 27 at 21.

However, Defendants cite no cases which hold § 3626 prohibits the assessment of punitive damages in prison conditions cases. And the Eleventh Circuit case they do cite, *Johnson*, indicates punitive damages are permitted in prison conditions cases.[5] 280 F.3d at 1325 (finding § 3626's "requirements mean that a

---

[5] The undersigned recognizes the argument Defendants make here regarding § 3626 was not made to the Eleventh Circuit in *Johnson* and has never been squarely addressed by the circuit court. *See*

punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case" and "that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so"). Thus, the current state of the law does not support the conclusion that § 3626 imposes a categorical prohibition on an award of punitive damages. *See Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021) (stating "that § 1997e(e) permits claims for punitive damages without a physical injury requirement"); *Benton v. Rousseau*, 940 F. Supp. 2d 1370, 1379-80 (M.D. Fla. 2013) (finding prisoner was entitled to $15,000 in punitive damages for violations of his First and Fourteenth Amendment rights). Defendants' motion as to punitive damages should be DENIED.

Accordingly, it is RECOMMENDED:

1. That Defendants' motion for partial summary judgment (Doc. 27) be GRANTED as to Claim 1 and Claim 2 for excessive force and failure to intervene and be DENIED as to punitive damages.

2. That this case be referred to the undersigned for further pretrial proceedings on Claims 3 and 4 relating solely to the allegation that Defendant

---

*Hoever v. Marks*, 993 F.3d 1353, 1364 n.5 (11th Cir. 2021) ("We decline the government's invitation to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626, as it falls outside the scope of the en banc briefing question posed to the parties.").

Burdett inserted his finger into Alphonse's rectum after he was handcuffed and the other Defendants failed to intervene.

At Pensacola, Florida, this 1st day of July, 2025.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.